v. United States of America, 19-540. Mr. Manning. Thank you, Your Honor. May it please the Court, Stephen Manning for Petitioner Ronnell Hanks. On de novo review, this Court should find that because Attorney Goldger failed to advise Mr. Hanks that his state conviction did not support an 851 enhancement and that he could have proceeded to trial without facing a 20-year mandatory minimum, that Mr. Hanks accepted a plea agreement without knowledge of an alternative course that was available to him and which rendered Mr. Hanks' decision to accept the plea agreement to be unknowingly and involuntarily made. Secondly, also on de novo review, this Court should conclude that had Attorney Goldger advised Mr. Hanks that he would not face a 20-year mandatory minimum at trial because he was not 851 eligible, the record demonstrates a reasonable probability that Mr. Hanks would have proceeded to trial rather than have accepted a plea agreement. The long-standing test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. That's Hill versus Lockhart. It's indisputable that Mr. Goldger did not inform Mr. Hanks of this alternative course of action. Go to trial and there will be no exposure to a 20-year mandatory minimum. Nevertheless, the District Court did not recognize that Mr. Hanks' decision to accept the plea agreement rather than to go to trial was unknowing and involuntary. The District Court mischaracterized the nature of Mr. Hanks' claim as being one where the defendant's specific claim is that counsel has misled him as to the guilty plea. This line of cases is called the mistaken prediction cases as discussed in the United States versus Sweeney and discussed again in the United States versus Arteca in 2005. In Arteca, the court held that a mistaken prediction case did not implicate whether a plea was voluntary and knowing, but in contrast, advice about the applicable statutory maximum and mandatory minimum did, citing to the United States X. Rel. Hill versus Cernullo. There, this court stated, misinformation about a statutory minimum is no less demonstrative of significant to a defendant's decision to plead guilty than an error about a statutory maximum. Mr. Mann, may I? This is Judge Radji, if I may interrupt you. Assume that we accept that counsel's failure to disclose this satisfied the ineffectiveness claim that you're making. I gather you still have to persuade us that the district court erred as a matter of law in weighing the Chhabra factors. Is that right? Yes, Your Honor. In weighing the Chhabra factors and in considering United States versus Lee, which the district court did not cite. Okay. Obviously, I've read your brief and I know why you think the Chhabra factors were not correctly weighed, but how do we reach that conclusion given that a number of them were based on credibility findings by the district court that were adverse to your client? Yes, Your Honor. The credibility findings were made, as the record demonstrates, based upon the district court's misapprehension of the state of the record. For example, the district court found that from April of 2014 through August 21 of 2014, there was a continuous threat by the government to file an 851 against Mr. Hanks, and it was because of this continuous threat that the district court felt that Mr. Hanks' credibility was undercut when, in fact, there was no continuing threat. The record has Mr. Golger in numerous places saying that after this April 2014 discussion about the very first plea agreement, there was a paragraph that said that the defendant could be eligible for sentencing enhancement under 841 and 851, right? Absolutely, but all of those were proposing that there would be no 851 filed, and the Golger said on numerous occasions that the 851… Not for evidence that there really was the threat, but just about whether Mr. Hanks should have been on notice that it was possible that he could be subjected to the mandatory minimum, right? So whether it's part of a threat or whether it's the government saying, well, we could do this to you, but we're not going to if you choose to plea, he would be on notice of that, wouldn't he? He would be on notice that that is part of the threat. Every time, the six times that he rejected plea agreements, he did so under this threat, but the record is clear. The government did not intend to file an 851. Well, that's a question of whether… Let me get to my critical part of this. That what you're highlighting gets to a question of whether an inference of a threat could be drawn, but the district court also indicated that in the penultimate meeting before the plea, then there was the specific threat that there was going to be the 851 charge, and yet your client walked away from the deal, and he offers the explanation that, well, it didn't sink in at that time. It only sunk in when he actually pleaded, but that's what the district court did not credit. So, given that there is a threat at a meeting before the plea, and the district court discrediting your client's explanation, help me out with why we don't defer to the district court's findings here. The district court discredited Mr. Hank's testimony. What the district court was concerned about was a lag of 35 minutes. On the morning of the 21st, there was, for the very first time, a threat of filing the 851 information, and that all arose from the conduct on the morning of August 18th, where everybody expected that Mr. Hanks was coming to court for a plea. And so the government expected it, Golger expected it, the court expected it because it was a change of plea calendar, and Hanks did not plead. And that whole thing happened because Mr. Hanks' mother told Golger that Hanks was going to plead, but that discussion with his mom didn't happen. So what we're talking about here is the government being upset, thinking that Hanks had been jerking them around, which was not true. But that was their perception. Look, you're taking us very far afield from my question, which is the district court found that even after this penultimate and ultimate meeting, he was willing to walk away. And then further, the district court said, and then when he pleaded guilty, he asked the court a number of questions about parts of the agreement that obviously troubled him. None of them pertained to the 851 charge. Now, I'm not suggesting you don't have arguments that your client's view is as you represent it, but the district court actually eyeballed him during all of this and was not persuaded. As a reviewing court, how do we not credit that? The district court's decision not to credit Hanks' testimony that the threat had open quote, not sunk in yet, close quote, specifically says the not crediting is in light of the evidence in the record that Hanks had been on notice of this threat since April. But it was never a threat. The court has misapprehended. But that wasn't the only thing that the court relied on. That was not crediting that as to not crediting that testimony. That is what the court relied on. I think you're parsing the district court's opinion in a way that may not be fair. I mean, the ultimate question was, did the district court think this is what influenced your client's plea? The answer the district court gave us was no. And then it went through chronology, history, everything. I'm not sure it's only one thing that prompted that rejection that you're suggesting. I was only talking about the crediting issue, Your Honor. Well, okay. All right. I've asked my question. Thank you. Regardless, if the district court is making credibility determination and deciding what testimony to credit, which is a factual determination, you agree that we review those determinations for clear error, right? Absolutely. Okay. So... Yes, there is clear error here, however, where the district court clearly misapprehended the state of the record. And back to the question about the Rule 11, the rule, what the judge did there is illogical. The judge says that Hanks raised no questions about an 851 enhancement based on count one that would have been relevant had he been going to trial. This was a plea agreement to a lesser occluded offense, and therefore... The district court in that discussion said that a lot of his questions about the nature of the plea agreement indicated that he was still evaluating whether he found it acceptable and was questioning different elements of it. And so I think the district court's determination was that he still seemed uncertain as to whether he wanted to accept it. And the fact that the 841 wasn't raised in that context means that that didn't seem to be an issue that concerned him. Isn't that the way the district court thought about it? Yes, but I believe that's illogical because there was no reason for Hanks to... I agree. First, I think to the extent the court found that Mr. Hanks was reluctant to accept a plea to a lesser included offense, which had a five-year mandatory minimum, and if exposed to an 851 would only get to 10, the fact that he had trouble with that is an objective contemporaneous evidence under Lee that he would, reasonable probability, he wouldn't have pled guilty. He wanted to go to trial. He didn't want... Mr. Manning? Yes. Mr. Manning, you have reserved three minutes for rebuttal. We'll hear from the government and then we'll come back to you. Yes, your honor. Good morning, your honors. May it please the court, on behalf of the United States, Assistant United States Attorney Rahul Kale, we ask this court to credit the district court's credibility findings and find that for four primary reasons, Rannell Hanks has not shown a reasonable probability that but for his counsel's alleged error, he would not have pleaded guilty and would have proceeded to trial. First, there was no contemporaneous evidence that the 851 influenced him before or during or even after the extensive rule 11 colloquy. Second, there was incredibly strong evidence of his guilt on the charges to which he was... May I ask you just on the first one? He says he did. He says he did. And the district court found some corroboration in the testimony of his mother and girlfriend. Am I missing something? Not at all, your honor. Okay, so there's some evidence. There is some evidence, but as your honor noted earlier, the district court also found that he was not credible, that Hanks himself was not credible. Continuing on that first point, there was other evidence to point that he was not interested. Prior to the pre-plea proceeding, he had told his lawyer, at least his lawyer had testified and the judge had credited the lawyer's testimony, that he was not concerned about the 851 because he believed he had pled guilty due to the Alford Doctrine. He also, half an hour before pleading guilty, as your honors have already noted, told his lawyer that he was... Even after the lawyer said there was going to be an 851, he said the lawyer replied that he was adamant that he was not pleading guilty and that he was proceeding to trial. So half an hour earlier, after being notified, he was not concerned about the 851. In fact, at the start of the plea agreement, he said he had reviewed the plea agreement and discussed it with counsel, but had more questions, as your honors have already noted. And he asked questions about the forfeiture provision, whether that would be an admission of gun possession. He asked about aggregation of disputes, how disputes about the guidelines would be resolved. All of these, the comment half an hour before that he was not pleading guilty, the questions to the court show that his decision to plead guilty took place after he heard answers directly from the judge. And not one of those answers related to 851. In fact, when the court even discussed the 851 issue, he had no questions about it. He'd been on direct appeal when assigned new counsel. This is after, obviously. That's an even more basic question. So under the plea agreement, he's looking at a guideline range of 22 to 27 years, right? Yes, your honors. So just at a more basic level, does it make sense that the idea that he'd be exposed to a 20 year minimum if he went to trial would be something that would be shocking or unexpected? I mean, if agreeing to a plea, he's going to get a minimum of 22 years, wouldn't you expect after a trial and a conviction to get at least 20 years? Your honor, I would agree. In fact, his advisory guidelines, if he had not gotten those two points of acceptance, which is a benefit of the plea agreement would have put him at 324 to 405. So obviously 20 years is a long time and I don't want to belittle that, but he was the plea agreement posed him with guidelines that your honor noted that were well above 20 years. And if he didn't take the plea agreement and went to trial and there was substantial evidence of his guilt, and if a jury agreed with that, he was looking at in the range of 27 to 33 years, which, even though 20 years is an incredibly long time, dwarfs that 20 years. Your honor, also, I mean, going on in the benefits of the plea agreement, which beyond an 851, there was the elimination of a 924 C possibility. And I know for the record, that if one looks at all the plea agreements that are in evidence, if one looks specifically at Joint Appendix 485, that was the first plea agreement that in the section labeled satisfaction of criminal liability, it said it included weapons. Previous plea agreements only mentioned that it would include, it would satisfy his liability for drug charges. The final plea agreement, which he charged, said drug charges and weapons charges, which shows that the time he pled guilty, the thing that was concerning to him was this 924 C that Mr. Goldger discussed. Okay, so the opposing counsel had gotten up and said that the district court was wrong because it relied on the idea that there was an ongoing threat from the government to charge him with a mandatory minimum, but there was in fact no threat and that undermines the district court's credibility determination. So do you have a response to that? Your Honor, I think we... Again, Your Honor, I apologize for interrupting at the phone, but the simple fact is the email from half an hour before. The email said that he had communicated that the 851 was going to be filed and Mr. Hanks replied he was adamant in plea that he was going to proceed to trial. So that is contemporaneous direct evidence that credibility... If 35 minutes after the threat is made, he decides to plead guilty, why doesn't that suggest that that made a difference? Do you think that the first threat was on the day that he pleaded guilty? Well, the threats were, I mean, the threat has been, to call it a threat, every plea agreement had discussed the possibility of an 851 and in fact said each plea agreement dating back from April stated that we would not file it if we did not... If he pled guilty. So it was implicit in all those plea agreements was rejection of plea agreements could lead to a filing of an 851. Then when there's direct evidence in the record that when he was told half an hour before about the 851, he said he was proceeding to trial and then he asked questions of the court, which did not relate to the 851, but related to other issues that he was concerned about. I don't know if that answers your question, Your Honor, but... I mean, might that suggest that he was persuaded by what his attorney was telling him that he would definitely be exposed to the 851? Your Honor, but there were so many other factors as the court found. There was also the 924C potential. There was also the dropping of the mandatory minimum. There was also the fact that as the court advised him, the fact that he was giving forfeiture was not a stipulation that the weapons were his. There was also the fact that the government would still have to prove at the sentencing hearing by a preponderance of the evidence, the drug quantity. These were all concerns he had about pleading guilty before because he didn't want to sign a plea agreement that would mean that he was responsible definitely for weapons, that he was responsible for drug quantities the government was I would respectfully suggest that his asking the court those questions and understanding the plea agreement better were the reasons that propelled him to plead guilty. So what do we... So from the fact that he didn't ask about 851, so what inference do we draw from that, that he wasn't concerned about it or that he... Go ahead. No, I think based on it, I think Your Honor earlier mentioned about the guidelines numbers. I can't read his mind about whether he was not concerned about it, but as Your Honor noted, the guidelines in the plea agreement were well above 20 years. So he may not have been at... That may not have been as concerning to him as perhaps a 924C charge, which had nothing to do with the guidelines, but would add five years to those guidelines, whatever those were ended up being determined. So I think the fact that he testified at the habeas hearing in which he stated that he had changed his mind and the court was able... The district court was able to see him, evaluate him, gauge how he was testifying, gauge him under cross-examination and determine that he was not credible, I think goes a long way towards... Plus what Your Honor has said before, goes a long way to thinking it was not a concern to him, but obviously I can't read his mind. Okay. Is there anything further, Mr. Palmer? No, thank you, Your Honor. Thank you. Mr. Manning, you've got three minutes. Thank you, Your Honor. The rule of... Can I just ask you about this basic point that I had asked to the government's counsel, which is if Mr. Hanks was looking at 22 to 27 years if he pleaded guilty to the charges, why would it have been shocking to him to discover that he might get 20 years if he went to trial and was convicted? Why would that make a difference? Because the 20 years is statutorily required and the guidelines are advisory. And that's the... So he was banking on the judge varying downward below the guideline range. I don't know if he was banking or he would have expected it or that was part of his calculation about going to trial. Yes. He knew as he testified that the court wasn't going to be able to impose a sentence on him below 20 years if he went to trial. I think what you're saying, Mr. Manning, is that a statutory minimum sentence is materially different from a guideline sentence from the defense perspective and also from the government's perspective. Yes, Your Honor. Yes, I would agree with that. With respect to the Rule 11, the plea agreement that he was pleading to said, number one, we're not going to file an 851 information. And number two, it's to the lesser included offense. So the court made inquiry about the lesser included offense and the 851 in that context. And that's what the court should have done, logically would have done. And there's no reason for Hanks to say, I need to ask about an 851 at trial on count one when that is the whole reason that he's pleading to this lesser plea agreement, which, by the way, had been in place since June 11th. The district court said this, quote, revised plea agreement. The district court can be read to say that occurred on August 21. And that is clearly erroneous. Go ahead, Judge Reggie. I'm sorry. How I understood the government's arguments, I want to give you an opportunity to respond, is if he had really cared about the 851, he might have said to the district court, is it right that they can bring these charges against me? And that that would have been expected given his earlier statement to counsel that he didn't think they could. Now, I'm not here again, suggesting you don't have an answer to it. In fact, I'm asking the question so that you do have an opportunity to give your answer to why that isn't a sound argument by the government. Thank you, Your Honor. My answer is twofold. Number one, the evidence concerning Mr. Hanks believing that because he pled to an Alford plea, he was not 851 eligible, is testimony of Golger disputed by Hanks, number one. Right, but the court credited Golger and discredited your client. So we have to operate with that assumption. I understand, Your Honor. However, the record also shows that that conversation occurred in April of 2014. And the district court found that there was evidence that in the months erroneous. The only evidence there was the only up because the old because it's not supported by any evidence. Golger's evidence was when I talked to him in April, he told me that he pled guilty under Alford. And so he wasn't concerned about it. But Golger also said they never discussed it again till August 21. So there's and there's a there is a letter in the record from Golger to Hanks on the 25th of June, in which Hanks is told by Golger, the government has agreed not to file an 851 notice, which could expose you to a mandatory 20 years. Golger tells Hanks that on June 25, in writing, there's no way after getting that letter. First of all, it undercuts Golger's testimony that that conversation ever happened that way. But in any event, assuming it, you know, the court can find that it did. Hanks, at that point, certainly has no reason to think he's immune. When his lawyer just told him, you could be exposed to a 20 year mandatory minimum. And I may not have made my question clear. I understand the government's argument to be with his initial view now undercut by what you're quoting us. It, they claim it's surprising that a man who asked all these other questions at his plea colloquy did not ask about what he's now claiming was the determinative factor in his very reluctant decision to plead guilty. And so I'm asking you, is there some reason why the district court could not have drawn that inference? Why as a matter of law, it would have been precluded? I, I'm not sure I follow exactly. Well, the judge cited the lack of questions as a reason why it didn't credit your client that the 851 was the determinative factor. And I've tried to highlight for you what I understand the government's best argument to be, and to ask you how in light of that you can still say the district court erred as a matter of law in reaching the conclusion it had removed the threat of an 851 at trial based on count one. That's what he was concerned with. He knew the document that he was pleading to had removed that issue. And the, and, and it's, I believe it is illogical for the court to have expected Mr. Hatch. You're going to ask other questions, you're going to ask other questions about, well, if I went to trial, the government would have to prove this or that. I'm just asking questions about what would happen at trial, not just about what would happen under the plea agreement, right? He asked, he asked a number of questions, but I, I, my recollection is that they had to do with sentencing more than trial. Yes, sir. In terms of aggregating the amounts, and I, and I do have to note that the, when the 851 came up during the Rule 11, the language the court used supported Mr. Hatch's understanding. Do we, do we, just a broad question, in order for you to prevail on at least the prejudice prong, again, assuming ineffective assistance, must we assign clear error? And I take it from some answers you've given that the answer is yes, but I want to give you that opportunity to clarify. Well, I, I think the, I think clear error, as I understand it, is a factual finding. I think de novo review is different. I think de novo review... No, no, no, no, no, no, no, stop, stop. So my question is, must we assign clear error because there was an evidentiary hearing where the district court made certain credibility findings, and you seem to dispute some, the basis for some of those findings. So in order for you to prevail, you're trying to prevail on the prejudice prong, must we assign clear error to those findings? Yes or no? If, in order to, um, for any factual finding, there would have to be a finding of clear error for the court, for this court, not to accept it. I, I certainly agree with that. I understand. Okay. So I understand your, your basic answer to be yes. Okay. But I, but I'm saying that... I have nothing further. But Menashe? I'm okay. Thank you very much for the argument. We'll reserve the decision.